IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Deborah S. Crossley,            :

    Plaintiff,              :

  v.                              :       Case No. 2:13-CV-804

                                       :

City of Coshocton,              :       MAGISTRATE JUDGE KEMP

    Defendant.              :

## OPINION AND ORDER

This matter is before the Court on a motion for summary judgment filed by Defendant the City of Coshocton. (Doc. 30). The motion has been briefed fully and is now ripe for decision. For the reasons set forth below, the City of Coshocton's motion for summary judgment will be denied in part and granted in part. More specifically, the motion for summary judgment will be denied as to Ms. Crossley's claims arising under the Family and Medical Leave Act and the Americans with Disabilities Act. However, the motion will be granted as to Ms. Crossley's claim for associational disability discrimination under Ohio law.

### I. Background

The following facts appear either in the complaint or other documents of record. Since the case is before the Court by way of summary judgment motion, the Court will, as explained in Section II, resolve any factual disputes in Ms. Crossley's favor when stating the material facts of the case.

On August 13, 2013, Plaintiff Deborah S. Crossley filed a complaint against her former employer, the City of Coshocton, arising from the termination of her employment on February 22, 2013. Ms. Crossley was hired as an Auditor Clerk for the City of Coshocton on July 19, 2010, reporting to Deputy Auditor Karen Slaughter from the date of her hire through July 31, 2012, when

Ms. Slaughter retired. After July 31, 2012, Ms. Crossley reported directly to the City Auditor, Sherry Kirkpatrick. Ms. Crossley describes her duties as "clerical in nature," and she states that they "included processing invoices, processing purchase orders, processing payroll checks, setting up spreadsheets, processing requests for leave (including FMLA leave) and paying utility bills." Compl. at ¶12.

On August 6, 2012, Ms. Crossley's long-time companion was diagnosed with stage 4 colon cancer. Twelve days after his diagnosis, on August 18, 2012, Ms. Crossley and her companion were married. Shortly thereafter, Ms. Crossley added her husband to the medical insurance that she received through her employment with the City of Coshocton. The City of Coshocton is self-insured for employee health coverage, although it has an excessive risk policy for individual medical claims exceeding $100,000.00. Due to his pre-existing condition, Ms. Crossley's husband was not able to receive benefits under the City of Coshocton's medical insurance policy until December 15, 2013.

Ms. Crossley alleges that, approximately one month after she added her husband to her medical insurance policy, Ms. Kirkpatrick, who was "visibly upset," confronted her and told her that Mr. Crossley's illness "was going to affect [her] budget." Id. at ¶24. Ms. Crossley also alleges that Ms. Kirkpatrick falsely accused her of failing to disclose the fact that she had added her husband to the medical insurance policy. Ms. Crossley states that, to the contrary, she provided the relevant paperwork to another employee in the office for processing.

Ms. Crossley also alleges that, in September 2012, she told Ms. Kirkpatrick that she was going to submit Family and Medical Leave Act ("FMLA") paperwork due to her husband's illness. According to Ms. Crossley, Ms. Kirkpatrick responded by stating, "[w]hy would you do that, I'm your boss and you don't need [the

2

paperwork]." Id. at ¶26.  Ms. Crossley completed the relevant FMLA forms approximately one month later.  Ms. Crossley alleges that she provided the completed forms to Ms. Kirkpatrick, who placed the forms in her personnel file and took no further action.  Consequently, Ms. Crossley claims that the City of Coshocton "did not provide her with eligibility notice under 29 C.F.R. §825.300(b) or notice of her rights and responsibilities as required by 29 C.F.R. §825.300(c)."  Id. at ¶32.

Ms. Crossley claims that she took approximately 13 days off of work to care for her husband between October 2012 and February 22, 2013, all of which "were covered by sick, vacation or compensatory time."  Id. at ¶¶33, 35.  On February 11, 2013, Ms. Kirkpatrick and Ms. Crossley had what Ms. Crossley refers to as a "kerfuffle" concerning leave that Ms. Crossley was taking for her husband's chemotherapy sessions. (Doc. 35 at 19).  Specifically, the complaint alleges that:

> On the morning of February 11, 2013, on her way to [her husband's] chemotherapy appointment, Ms. Crossley received a text message from Mrs. Kirkpatrick stating that she thought Ms. Crossley was taking off every other Wednesday for Chemotherapy.  Ms. Crossley responded with a text stating that she had told Ms. Kirkpatrick that the appointments were now on Mondays.  Ms. Kirkpatrick responded by sending her a text asking what Wednesday was.  Ms. Crossley responded with a text stating that she was not taking leave on Wednesday.  Ms. Kirkpatrick responded by stating that she would appreciate it in the future if Ms. Crossley would put the chemotherapy appointments on the office calendar.

Id. at ¶¶41-46.  Ms. Crossley states that she agreed to and indeed did place future chemotherapy dates on the office calendar.

On Wednesday, February 20, 2013, the Auditor's Office received a medical bill for over $20,000.00 from Mr. Crossley's surgery.  The Auditor's Office paid that bill on Friday, February 22, 2013.  Also on February 22, 2013, Ms. Crossley reminded Ms.

3

Kirkpatrick of her husband's upcoming chemotherapy appointment the following Monday.  Ms. Crossley claims that, approximately two hours after she gave Ms. Kirkpatrick that reminder, Ms. Kirkpatrick asked her if she would stay a few minutes after work so that Ms. Kirkpatrick could speak with her.  During the meeting at the end of the workday, Ms. Kirkpatrick told Ms. Crossley that her employment was being terminated.  Ms. Crossley asserts that she asked Ms. Kirkpatrick why and Ms. Kirkpatrick responded by stating "[w]e just don't get along."  Id. at ¶51.  Ms. Crossley alleges that Ms. Kirkpatrick added that, as an elected official, Ms. Kirkpatrick "did not need to have a reason to terminate" her employment.  Id.  The medical benefits for Ms. Crossley and her husband were terminated that day.

In her first cause of action, Ms. Crossley sets forth claims under the FMLA.  In particular, Ms. Crossley alleges that:

> [b]y failing to provide [her] with notice of her eligibility for and rights and responsibilities under the FMLA, [the City of Coshocton] interfered with [her] FMLA rights, and by terminating [her] in part because of her request for and use of FMLA leave, [the City of Coshocton] discriminated against [her] in retaliation for her exercise of her FMLA rights.

Id. at ¶60.  In her second cause of action, Ms. Crossley alleges that "[b]y terminating [her employment] in part because of her association with her disabled husband, [the City of Coshocton] has violated the Americans with Disabilities Act, as amended." Id. at ¶62.  In her third cause of action, Ms. Crossley asserts that the City of Coshocton's conduct "violated O.R.C. Chapter 4112, entitling [her] to the remedies available pursuant to R.C. §4112.99."  Id. at ¶64.

On December 1, 2014, the City of Coshocton filed a motion for summary judgment, seeking judgment in its favor as to each of Ms. Crossley's claims.  (Doc. 30).  Ms. Crossley filed a memorandum in opposition to the City of Coshocton's motion for

4

summary judgment on January 12, 2015.  (Doc. 35).  On January 26, 2015, the City of Coshocton filed a reply in support of its motion.  (Doc. 37).  Consequently, the motion for summary judgment has been briefed fully, and it is now ripe for decision.

## II. Motion for Summary Judgment Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law.  Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 82 S. Ct. 486, 7 L. Ed.2d 458 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed.2d 142 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 82 S. Ct. 993, 8 L. Ed.2d 202 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of

material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the instant motion must be decided.

### III. Discussion

The Court first addresses the motion for summary judgment as it applies to Ms. Crossley's FMLA claims.  After doing so, the Court examines the motion as it applies to Ms. Crossley's claims for associational disability discrimination under the ADA and Ohio law.

### A. FMLA Claim

The FMLA entitles an eligible employee to take up to twelve weeks of leave during any twelve-month period for a variety of reasons, which include caring for a spouse who suffers from a serious health condition as defined in the statute.  See 29 U.S.C. §2612(a)(1)(C); see also 29 U.S.C. §2611(11)("The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves ... continuing treatment by a health care provider").  In this case, the parties do not dispute that the City of Coshocton is a covered employer under the FMLA, nor do they dispute that Ms. Crossley's husband suffered from a serious health condition as defined in the statute.

Under 29 U.S.C. §2615, a covered employer is prohibited both from interfering with, restraining, or denying the exercise of its employees' rights to family and medical leave, and from discharging or otherwise retaliating or discriminating against such employees for opposing unlawful practices under the FMLA. Edgar v. JAC Prods., Inc., 443 F.3d 501, 507 (6th Cir. 2006). There are two distinct theories of recovery on FMLA claims:  (1) the "interference" theory and (2) the "retaliation" theory. Arban v. West Pub. Corp., 345 F.3d 390, 400-401 (6th Cir. 2003).

In this case, the City of Coshocton urges that it is entitled to summary judgment on Ms. Crossley's claims under both theories.

The burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies to Ms. Crossley's FMLA claims. See Donald v. Sybra, Inc., 667 F.3d 757, 762 (6th Cir. 2012); but see Saulter v. Detroit Area Agency on Aging, 562 Fed. Appx. 346, 362 n.1 (6th Cir. 2014)(expressing disagreement with Donald's conclusion that the McDonnell Douglas burden-shifting framework applies to FMLA interference claims but noting that it is bound to follow the decision). Under this framework, the Court first examines whether Ms. Crossley sets forth either a prima facie case of interference or a prima facie case of retaliation under the FMLA. Donald, 667 F.3d at 761. If Ms. Crossley sets forth a prima facie case under either theory, the burden shifts to the City of Coshocton to articulate a legitimate, nondiscriminatory reason for terminating her employment. Id. If the City of Coshocton sets forth such a reason, the burden then shifts back to Ms. Crossley to demonstrate, by a preponderance of the evidence, that the proffered reason is a pretext for unlawful discrimination. Id. at 762.

### A. Interference Claim

The Court first examines whether Ms. Crossley has come forth with facts which, if true, support a prima facie case for interference with her FMLA rights. In order to state a claim under the interference theory, Ms. Crossley must demonstrate that: (1) she was an eligible employee; (2) the City of Coshocton is an employer under the statute; (3) she was entitled to FMLA leave; (4) she gave the City of Coshocton notice of her intention to take leave; and (5) the City of Coshocton denied her FMLA benefits to which she was entitled. See Wysong v. Dow Chem. Co., 503 F.3d 441, 447 (6th Cir. 2007), citing Cavin v. Honda of Am.

Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003), superseded on other grounds by 29 C.F.R. §825.302(d).  In this context, interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave," and "manipulation by a covered employer to avoid responsibilities under [the] FMLA." 29 C.F.R. §825.220(b).  Ms. Crossley also must demonstrate prejudice as a result of the violation.  Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 122 S. Ct. 1155, 152 L. Ed.2d 167 (2002).  Because an FMLA interference claim is based upon a substantive denial of benefits, Ms. Crossley need not demonstrate discriminatory intent in order to recover on an interference claim.  See Edgar, 443 F.3d at 507.

In this case, the City of Coshocton does not dispute that Ms. Crossley has satisfied the first four elements of a prima facie interference case.  Instead, the City of Coshocton focuses on the fifth element, claiming that Ms. Crossley cannot demonstrate that it denied her benefits to which she was entitled.  The City of Coshocton also argues that Ms. Crossley fails to demonstrate that she suffered prejudice as a result of the alleged violation.  Simply stated, the City of Coshocton's argument is that the occasion for Ms. Crossley to take unpaid FMLA leave never arose because it provided her with paid sick leave instead of unpaid FMLA leave when she was absent from work to care for her husband.  It points out that Ms. Crossley's employment was terminated (for reasons which the City claims were unrelated to her use of FMLA leave) before she actually used any FMLA leave.  Based upon this argument, the City of Coshocton argues that Ms. Crossley suffered no harm to her FMLA rights.

There is no doubt that an employer may run paid sick leave and unpaid FMLA leave consecutively, thereby granting the employee a more generous benefit than the FMLA alone would provide.  However, as the Eleventh Circuit Court of Appeals noted

in Strickland v. Water Works and Sewer Bd. of Birmingham, 239 F.3d 1199, 1204 (11th Cir. 2001), "an employer cannot escape liability under the [FMLA] for the period during which the employee, whose leave qualifies under the FMLA, is receiving ... wages in the form of sick (or other pay)." In a dissenting opinion in Allen v. Butler Cnty. Com'rs, 2009 WL 2514063, at *4 (6th Cir. Aug. 18, 2009), Judge Clay summarized the decision in Strickland as follows:

> Strickland involved an employer who terminated an employee after he left the job site because he was suffering a diabetic attack. On summary judgment, the district court held that the FMLA provided no relief because, at the time of the employee's discharge, he was covered by the employer's paid sick leave policy. On appeal, the Eleventh Circuit addressed whether the employee was entitled to the protection of the FMLA under those circumstances.
> As noted by my colleagues, the Strickland court explained that "Neither Congress nor the Department of Labor could have intended … to allow employers to evade the FMLA by providing their employees with paid sick leave benefits." Otherwise, the court explained, "when an employee misses work for an illness that qualifies under both his employer's paid sick leave policy and the FMLA, his employer could elect to have the absence count as paid rather than FMLA leave and would then be free to discharge him without running afoul of the Act." The Strickland court therefore held that "the district court erred in holding that an employee who has not exhausted his paid sick leave is not entitled to the protections of the FMLA."

Id. (internal citations omitted).

In this case, under the reasoning in Strickland, the City of Coshocton may not avoid liability solely on the ground that it was providing Ms. Crossley paid sick leave instead of unpaid FMLA leave. To do so would create the situation discussed in Strickland – i.e., the City of Coshocton could avoid potential FMLA liability simply because it elected to count Ms. Crossley's absences as paid sick leave. Because such an outcome is

inconsistent with the FMLA's purpose, the Court finds the City of Coshocton's argument to be without merit.  Because there is no dispute that Ms. Crossley's employment was terminated prior to her taking the full amount of time that she was entitled to under the FMLA, she may be able to demonstrate harm caused by the alleged violation.  Cf. Coker v. McFaul, 2007 WL 1892092, at *9 (6th Cir. June 29, 2007)(finding that the plaintiff was unable to make a showing of prejudice where defendant met and exceeded his obligation under the FMLA).  Based upon the foregoing, the Court finds that Ms. Crossley has made out a prima facie case of FMLA interference.

### B. Retaliation Claim

The Court now examines whether the facts support a prima facie case for FMLA retaliation.  To establish a prima facie case of FMLA retaliation, Ms. Crossley must demonstrate that: (1) she was engaged in an activity protected by the FMLA; (2) the City of Coshocton knew that she was exercising her rights under the FMLA; (3) after learning of her exercise of her FMLA rights, the City of Coshocton took an employment action adverse to her; and (4) there was a casual connection between her protected FMLA activity and the adverse employment action.  See Mann v. Navicor Grp., LLC, 2012 WL 2926275, at *5 (6th Cir. July 18, 2012), citing Donald v. Sybra, Inc., 667 F.3d 757, 761 (6th Cir. 2012).  Distinct from the FMLA interference claim, the FMLA retaliation claim involves an examination of an employer's motive.  Crawford v. JP Morgan Chase & Co., 531 Fed. Appx. 622, 627 (6th Cir. Aug. 6, 2013), citing Edgar, 443 F.3d at 508.  As the Court of Appeals has explained, "[t]he employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights."  Edgar, 443 F.3d at 508 (emphasis in original)(citation omitted).

In this case, the City of Coshocton asserts that Ms. Crossley has not demonstrated a causal connection between her protected FMLA activity and the loss of her job. However, the Court of Appeals has recognized that temporal proximity between protected activity and an adverse employment action may be sufficient to satisfy the causation element of a prima facie case of FMLA retaliation. Crawford, 531 Fed. Appx. at 628-29 (citation omitted); see also Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 283-84 (6th Cir. 2010). Here, Ms. Crossley sets forth evidence demonstrating that she and Ms. Kirkpatrick had a disagreement on February 11, 2013 pertaining to leave for chemotherapy appointments, just eleven days prior to the termination of her employment on February 22, 2013. The Court finds that this temporal proximity could support a finding that there is a causal connection between the protected activity and the adverse employment action. Accordingly, Ms. Crossley has presented evidence sufficient to support a prima facie case of FMLA retaliation.

### C. Legitimate, Non-Discriminatory Reason and Pretext for Unlawful Discrimination

Because Ms. Crossley sets forth a prima facie case for FMLA interference and FMLA retaliation, the burden shifts to the City of Coshocton to articulate a legitimate, nondiscriminatory reason for terminating her employment. Gates v. U.S. Postal Serv., 2012 WL 4902851, at *4 (6th Cir. Oct. 16, 2012). In this case, the City of Coshocton states that it terminated Ms. Crossley's employment "because she was insubordinate, disrespectful to her supervisors, failed to effectively communicate with fellow workers, disclosed private information, failed to complete assignments and failed to treat co-workers with appropriate behavior and respect." (Doc. 30 at 14). In response, Ms. Crossley claims that proffered reasons for the termination of her

employment are all a pretext for unlawful discrimination.

Ms. Crossley may demonstrate pretext by demonstrating that the stated reasons for the termination of her employment either (1) have no basis in fact, (2) they were not the actual reason, or (3) the reasons are not sufficient to explain the termination of her employment.  <u>White v. Baxter Healthcare Corp.</u>, 533 F.3d 381, 393 (6th Cir. 2008).  At this stage of the litigation, the Court considers whether Ms. Crossley has set forth evidence which would enable a factfinder to conclude that the City of Coshocton's stated reasons for terminating her employment are not the true reasons and they are instead a pretext for unlawful discrimination.  <u>Bryson v. Regis Corp.</u>, 498 F.3d 561, 572 (6th Cir. 2007).

In this case, Ms. Crossley has produced sufficient evidence from which a jury could reasonably reject the proffered explanation and infer that the City of Coshocton intentionally discriminated against her.  <u>Seeger</u>, 681 F.3d at 285.  Specifically, a jury could infer intentional discrimination based upon the argument pertaining to leave for chemotherapy that took place between Ms. Crossley and Ms. Kirkpatrick less than two weeks prior to her termination.  Ms. Crossley also has produced evidence that the City of Coshocton was self-insured with respect to medical claims, that Ms. Kirkpatrick expressed concerns that treating Mr. Crossley's illness would adversely impact the budget, and that her employment was terminated on February 22, 2013, two days after the hospital bill from her husband's surgery, totaling over $20,000.00, was received in the office for processing.  Also on the day her employment was terminated, Ms. Crossley reminded Ms. Kirkpatrick that her husband's chemotherapy appointment was the following Monday, February 25, 2013.  Viewing the evidence in the light most favorable to Ms. Crossley, the Court finds that she has set forth sufficient evidence that the

City of Cosohocton's asserted reasons for terminating her employment were pretextual. Consequently, the motion for summary judgment as to Ms. Crossley's FMLA claims will be denied.

### B. ADA Claim

The Court now examines the motion for summary judgment as it applies to Ms. Crossley's ADA claim. The ADA provides that to "discriminate against a qualified individual on the basis of disability" includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. §12112(b)(4). The "expense" theory of associational discrimination is one of three such theories, and it "covers situations where an employee suffers an adverse employment action because of his or her association with a disabled individual covered under the employer's health plan, which is costly to the employer." Stansberry v. Air Wisconsin Airlines Corp., 651 F.3d 482, 487 (6th Cir. 2011). In order to state a prima facie case of associational discrimination under the ADA, Ms. Crossley must demonstrate that: (1) she was qualified for the position; (2) she was subject to an adverse employment action; (3) she was known to have a relative with a disability; and (4) the adverse employment action occurred under a circumstance that raises a reasonable inference that the relative's disability was a determining factor in the decision. Id. The associational disability must be a but-for cause of Ms. Crossley's discharge. See Demyanovich v. Cadon Plating & Coatings, LLC, 747 F.3d 419, 433 (6th Cir. 2014).

In its motion for summary judgment, the City of Coshocton argues that Ms. Crossley is unable to satisfy the fourth element of a prima facie case. More specifically, the City of Coshocton argues that Ms. Crossley has failed to produce evidence that her

13

husband's disability was determining factor in Ms. Kirkpatrick's decision to terminate Ms. Crossley's employment.  Conversely, Ms. Crossley argues that she has produced direct evidence of discrimination in the form of Ms. Kirkpatrick's explicit statement that treating Ms. Crossley's husband would impact her budget.  The City of Coshocton disputes that this is direct evidence, given that it does not establish the existence of a fact absent any inferences.  See Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004).  This Court agrees with the City of Coshocton that Ms. Kirkpatrick's statement is not direct evidence of discrimination.  However, Ms. Kirkpatrick's statement is at least a circumstance that raises a reasonable inference that Mr. Crossley's disability was a determining factor in the decision to terminate Ms. Crossley's employment. Consequently, Ms. Crossley sets forth a prima facie case of associational discrimination, and the burden shifts to the City of Coshocton to articulate a legitimate, nondiscriminatory reason for terminating her employment.  See Rosebrough v. Buckeye Valley High Sch., 582 Fed. Appx. 647 (6th Cir. Oct. 8, 2014) (finding that, because the plaintiff offered only indirect evidence of discrimination, the burden-shifting framework of McDonnell Douglas Corp. v. Green applied).

    The City of Coshocton alleges the same legitimate, non-discriminatory reasons it raised in opposition to Ms. Crossley's FMLA claims.  As set forth in the preceding section of this Opinion and Order, there is a genuine issue of material fact as to whether those reasons constitute pretext for unlawful discrimination.  Based upon the foregoing, there is sufficient evidence in the record from which a reasonable jury could conclude that the City of Coshocton discriminated against Ms. Crossley on the basis of her husband's disability in violation of the ADA.  That is, based upon the evidence in the record, a

reasonable jury could conclude that Ms. Kirkpatrick would not have terminated Ms. Crossley's employment but for her concerns regarding the costs of chemotherapy and other treatments. Accordingly, the motion for summary judgment as to Ms. Crossley's ADA claim will be denied.

### C. Ohio Discrimination Claim

Finally, the Court examines the motion for summary judgment as it applies to Ms. Crossley's claim that the City of Coshocton's conduct violated O.R.C. Chapter 4112. Ohio Revised Code §4112.02(A) provides that, "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." In her memorandum in opposition to the City of Coshocton's motion for summary judgment, Ms. Crossley acknowledges that "[d]icta in Smith v. Hinkle Mfg., Inc., 36 Fed. App. 825, 830-31 (6th Cir. 2002), an unpublished decision, states that R.C. §4112.02 does not apply to associational disability discrimination cases." (Doc. 35 at 35). However, Ms. Crossley states that Arnold v. City of Columbus, 515 Fed. Appx. 524, 529-30 (6th Cir.), cert. denied, 134 S. Ct. 532 (2013), recognized an associational racial discrimination case. Ms. Crossley argues that race does not differ from disability, and, as such, the "better-reasoned law is that Ohio laws against discrimination recognize a claim for associational disability discrimination." (Doc. 35 at 35).

Ms. Crossley does not cite any legal authority indicating that Ohio has recognized associational disability discrimination claims under its anti-discrimination laws. Further, at least one

15

court in this district has held that there is no authority establishing such a claim under Ohio law. <u>Green v. Wal-Mart Stores, East, L.P.</u>, 2013 WL 3223629, at *10 (S.D. Ohio June 23, 2011)(granting summary judgment on associational disability discrimination claim because it could find "no authority establishing the existence of such a claim..."). The Court agrees. Absent a decision from a state court recognizing such a claim, this Court is not persuaded that the Ohio Supreme Court would interpret Ohio statutory law in the manner argued by Ms. Crossley. Consequently, the City of Coshocton's motion for summary judgment will be granted as to Ms. Crossley's claim under O.R.C. Chapter 4112.

### III. <u>Conclusion</u>

For the reasons set forth above, the City of Coshocton's motion for summary judgment is denied in part and granted in part. (Doc. 30). More specifically, the motion is denied as to Ms. Crossley's FMLA claims set forth in count one of the complaint and her ADA claim set forth in count two of the complaint. However, the motion is granted as to Ms. Crossley's claim for associational disability discrimination under Ohio law set forth in count three of the complaint. That claim is dismissed with prejudice. The Clerk is directed to contact counsel to arrange a date on the Court's calendar for the trial of the remaining claims.

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge